(77 South. 482)

No. 22860.

STATE v. CONNOR.

(Nov. 26, 1917. Rehearing Denied Jan. 3, 1918.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞1171(1) — REMARK OF DISTRICT ATTORNEY—REVERSIBLE ERROR.

A remark by the district attorney, in the course of his argument before the jury which is not prejudicial to the accused is not reversible error.

2. CRIMINAL LAW ☞721(3) — REMARK OF DISTRICT ATTORNEY—CONSTRUCTION.

A wrong interpretation of a remark of the district attorney by counsel for the accused, to the effect that "this is a reference to the accused not taking the witness stand and testifying," cannot be charged to the district attorney, who had not said or intimated that the accused had not taken the witness stand.

O'Niell, J., dissenting.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; William C. Baker, Judge.

Jack Connor was convicted of larceny, and he appeals. Affirmed.

James R. Parkerson, of New Orleans, for appellant. A. V. Coco, Atty. Gen., and Percy Saint, Dist. Atty., of Franklin (Vernon A. Coco, of New Orleans, of counsel), for the State.

SOMMERVILLE, J. Jack Connor and Harry Johnson were jointly charged with larceny. Johnson moved for a severance, which was granted. Connor was tried and convicted, and he has appealed.

Connor moved to quash the jury venire on the ground that the Act numbered 135, 1898, p. 216, is unconstitutional, being in conflict with the Fourteenth and Fifteenth Amendments of the Constitution of the United States; in that it delegates to the jury commissioners discriminatory power in selecting jurors; that the jurors were selected from the pollbooks of the parish of St. Mary, which books contained the names of less than one-half of the male population of the parish between the ages of 21 and 60; that the drawing of the jury from the pollbooks is in conflict with the Fourteenth and Fifteenth Amendments for the reason that the majority of the male citizens between 21 and 60, in the parish, are thereby disqualified and prohibited from serving on juries.

Other grounds are assigned on the brief, viz.: That more than 30 days elapsed after the issuance of the order for drawing the jury and the convening of the jury commission, and that the list of jurors drawn should have been published for 30 days.

As these last two points do not form parts of the motion to quash filed in this case they will not be considered.

An examination of Act 135 does not show that discriminatory powers are therein given to the commissioners in drawing juries; and no such powers have been pointed out by defendant. The act directs the commissioners to select the names of 300 jurors "from the persons qualified under this act to serve as jurors for their respective parishes"; and the act further provides:

"That the qualifications of a juror to serve in any of the courts of this state shall be as follows: To be a citizen of the United States and of this state, a bona fide male resident of the parish in and for which the court is hold-

en for one year next preceding such service; not under interdiction; or charged with any crime or offense; or convicted at any time of any crime or offense punishable by hard labor, unless he has been pardoned; and to be a competent and intelligent person of full age having capacity to serve as a juror to try and determine both civil and criminal cases; provided, that there shall be no distinction made on account of race, color or previous condition."

We fail to discover any discriminatory powers granted in the act to the jury commissioners in drawing juries, or how the act conflicts in any way with the Fourteenth and Fifteenth Amendments of the Constitution of the United States.

It is said that the commissioners selected the list of jurors from the pollbooks of the parish, and, as the pollbooks contain the names of less than one-half of the male population of the parish between 21 and 60 years of age, that more than one-half of such male population of the parish is disqualified and prohibited from serving on the juries by such action on the part of the commissioners.

The record contains no evidence whatever as to the process of selecting the jurors which served at the term of court when defendant was tried. It is not shown whether the commission used the pollbooks of the parish or not, or whether all persons qualified to serve as jurors were registered or not. No attempt to show any irregularity or discrimination on the part of the commissioners in drawing the jury was made. The motion to quash was properly overruled.

It has been held that, where it has not been shown that the list of registered voters did not contain the names of all persons qualified to serve as jurors, the objection to the use of pollbooks by the jury commissioners must fail (State v. Thomas, 35 La. Ann. 24; Marr's Revised Statutes, p. 1374), and that the law does not direct from what source the jury commission shall seek for qualified jurors (State v. Green, 43 La. Ann.

403, 9 South. 42; Marr's Revised Statutes, p. 1374).

The several bills of exceptions taken to remarks made by the district attorney in the course of his argument to the jury which were charged to be prejudicial to the accused, and to constitute reversible error, will be considered together.

It appears from the bills of exceptions and the per curiam of the trial judge that defendant was charged with, and was being tried for, the crime of larceny; that defendant had confessed the crime to several persons, who testified on the trial to the making of said confessions by the accused; that the stolen goods were found in the possession of the accused; and that he did not offer any evidence whatever in his behalf.

It would further appear that the district attorney, in argument, stated that the state had assumed the burden of proof and proved that defendant had confessed; that the stolen goods had been found in his possession; and, further, that the finding of goods recently stolen in the possession of the accused raised a presumption of guilt; and that the burden was then upon the accused to show how he came into possession of the property. State v. Kelly, 50 La. Ann. 597, 23 South. 543; 1 Greenleaf on Evidence, § 34; Roscoe Criminal Evidence, p. 18.

[1, 2] Upon making this argument to the effect that possession of stolen goods raises a presumption of guilt, the district attorney proceeded, and said, or asked:

"Is there one single denial from the defendant that he stole these goods?"

Denial might have come by several sources. The language did not necessarily convey to the minds of the jurors that the denial must have come from defendant himself as a witness on his own behalf. And the district attorney asserts that he was not at the time referring to the circumstance that defendant had not taken the witness stand. The trial

judge agreed with the district attorney as to the scope of the remark or question. He says in his per curiam:

"The court is of the opinion that the direct reference to the accused having failed to take the witness stand in his own behalf was made by the attorney for the accused, and not by the district attorney."

The district attorney had asked:

"Is there one single denial from the defendant that he stole these goods?"

And, counsel for defendant, interrupting him, said:

"This is a reference to the accused not taking the stand and testifying."

That was an interpretation by counsel for the accused of the question asked by the district attorney. In that interpretation, counsel used words which had not been used or intended to be used by the district attorney, and he was the first and only one who called the attention of the jury to the fact that defendant had not taken the stand to testify. The district attorney did not make the objectionable remark, and he is not responsible for counsel for defendant having done so.

When the district attorney was charged by counsel for defendant with having called the attention of the jury to the fact that the accused had not taken the stand in his own behalf, the trial judge says:

"The district attorney continued in his argument, first disclaiming any intention to call the attention of the jury to the fact, and denying that he had done so. He then continued and used the language above quoted. But continued on, and completed his statement to this effect: 'The court has already charged you that the accused does not have to testify, and I ask you to follow the instructions of the court, and to disregard anything I may have said with reference to the accused not taking the stand, if you consider I have made any such reference.'"

Thereupon defendant reserved another bill of exceptions to the district attorney's last above quoted remark.

Counsel for defendant, as stated by the trial judge, was the first one to directly refer to the failure of the defendant to take the witness stand, and, after provoking a denial of any such statement or reference from the district attorney, he excepted again to the district attorney saying to the jury:

"If you consider I have made any such reference, I ask you to follow the instructions of the court, and disregard anything I may have said with reference to the accused not taking the stand."

We consider that the objectionable references were first made by counsel for defendant, and that they cannot be properly charged to the district attorney, and that the replies of the district attorney to counsel for defendant were in no manner prejudicial to the accused with the jury.

This case does not fall within the law as interpreted in State v. Robinson, 112 La. 939, 36 South. 811, and State v. Sinigal, 138 La. 469, 70 South. 478, forbidding the inference to go to the jury from the court or district attorney that the failure of the accused to take the witness stand should operate against him.

Judgment affirmed.

O'NIELL, J., dissents. LECHE, J., takes no part, not having heard the argument.